**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3610
_____

UNITED STATES OF AMERICA

v.

ADEKUNLE ADETAYO ADEOLU,
a/k/a Archie

Adekunle Adetayo Adeolu,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable Mitchell S. Goldberg
D.C. No. 2-11-cr-00436-001
_____

Argued March 23, 2016
_____

Before: GREENAWAY, JR., VANASKIE and SHWARTZ,
*Circuit Judges*

(Opinion Filed:  September 12, 2016)

Karina D. Fuentes, Esq.     [ARGUED]
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

Richard Coughlin, Esq.
Office of Federal Public Defender
800-840 Cooper Street

Suite 350
Camden, NJ 08102
    *Counsel for Appellant, Adekunle Adeolu*


Jose R. Arteaga, Esq.          [ARGUED]
Emily McKillip, Esq.
Zane David Memeger
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee, United States of America*


_____


OPINION
_____


VANASKIE, *Circuit Judge*.

Appellant Adekunle Adeolu was the part-owner and office manager of a tax preparation company that prepared fraudulent tax returns by encouraging taxpayers to claim false dependents. Adeolu was ultimately convicted of conspiracy to defraud the United States and of aiding and abetting the preparation of materially false tax returns, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2). At sentencing, the District Court applied the vulnerable victim sentencing enhancement set forth in U.S.S.G. § 3A1.1(b)(1) based upon Adeolu's fraudulent use of young children's personal information. On appeal, Adeolu argues that the children were not vulnerable victims because they did not experience "actual" harm. We write to clarify that a showing of actual harm is not required under the vulnerable victim sentencing enhancement. Rather, our existing test for the application of this enhancement requires a "nexus" between the victim's vulnerability and the crime's success, a requirement clearly

2

met in this case. We will therefore affirm the District Court's application of this enhancement and the sentence it imposed.[1]

## I.

Adeolu's tax preparation company employed approximately fifteen people and prepared fraudulent tax returns in two ways: by selling the taxpayer an individual's personal information to fraudulently claim as the taxpayer's dependent; or, by suggesting that the taxpayer fraudulently claim a dependent that the taxpayer personally knew.[2] According to the District Court, the individuals who were fraudulently claimed as dependents ranged in age from one to eighteen years old, including a thirteen-year-old, nine-year-old, six-year-old, and five-year-old child. (App. 1111.) At sentencing, the District Court applied the vulnerable victim enhancement after finding that Adeolu stole these individuals' personal information in order to file fraudulent tax returns,

---

[1] In affirming the sentence, we reject Adeolu's challenge to the District Court's application of the four-level leadership enhancement under U.S.S.G. § 3B1.1(a) as well as his challenge to the substantive reasonableness of his sentence.

[2] For example, Felicia Jones testified that she purchased a fraudulent dependent from a tax preparer at Adeolu's office for $1,000. Another individual, Lassey Mensah, testified that he purchased a dependent for $800. Additionally, during an undercover investigation, an undercover agent told Adeolu that she did not have any dependents, but Adeolu nonetheless suggested that if she could claim a minor as a dependent, it would eliminate her tax burden. When the undercover agent later provided a minor's information to be falsely listed as a dependent, Adeolu prepared the tax return, which generated a tax refund for the undercover agent. During a separate investigation, another undercover agent told an employee that she did not have any dependents, so the employee suggested that she find one. When the agent returned several hours later, the agent said she was claiming her friend's child as a dependent, and an employee prepared her tax return listing this minor as her nephew.

that these individuals' youth gave rise to their vulnerability, and that they experienced tangible and intangible harm.

## II.

Our review of the District Court's legal interpretation of the Sentencing Guidelines is plenary. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002). We review the District Court's application of the Sentencing Guidelines for clear error. *Id.*

## III.

On appeal, Adeolu argues that the vulnerable victim enhancement should not apply because the "minors did not suffer actual harm, such as loss of tax refund proceeds, a fine, or a negative mark on their credit score."[3] (Appellant Br. at 36.) Our Court, however, has never held that the vulnerable

---

[3] Adeolu also argues that the minors cannot be considered vulnerable merely by virtue of their age. *See* Appellant's Br. at 33. While "presumed vulnerabilities among broad classes of victims . . . are disfavored," they are not prohibited, *Zats*, 298 F.3d at 188, and may be appropriate based on the facts of a particular case. The District Court's treatment of minors as a group is supported by the fact that minors as a class generally do not file their own tax returns (unless they are working), and are unlikely to check their tax status or monitor for identity theft. *See United States v. Crispo*, 306 F.3d 71, 83 (2d Cir. 2002) (concluding "class attributes can be sufficient if they make the finding of vulnerability beyond dispute" and thus generalizations were permitted with respect to a toddler's ability to fend off a kidnapper). Moreover, even if we concluded an individualized determination as to each individual's vulnerability is preferred, the enhancement may be applied when there is a single vulnerable victim, and, as discussed herein, there was sufficient evidence from which the District Court could have concluded that a one-year-old child claimed as a dependent was "vulnerable" within the meaning of the enhancement. We thus conclude that there was no error in the District Court's finding of vulnerability across the group of affected minors in this case.

victim enhancement requires a showing of actual harm, whether financial or otherwise.[4]  Rather, our three-part test under *United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999), properly analyzes the "nexus" between a victim's vulnerability and the success of the defendant's criminal scheme, thereby encompassing any resulting harm to the victim and rendering an analysis of "actual" harm inconsequential.

## A.

The vulnerable victim enhancement states:  "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." U.S.S.G. § 3A1.1(b)(1).[5]  Unlike other enhancements, the vulnerable victim enhancement does not explicitly require a showing of harm.  *Cf.* U.S.S.G. § 2B1.1 cmt. n.3(A) (discussing actual loss and intended loss).  The application note to section 3A1.1(b)(1) explains that a "vulnerable victim" is someone who is: (1) "a victim of the offense of conviction and any conduct for which the defendant is accountable under 1.3 (Relevant Conduct)"; and (2) "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2.  In light of these requirements, this Court applies a three-part test to determine the applicability of the vulnerable victim enhancement, addressing whether:

---

[4] In this regard, our position is similar to the Second Circuit's position on the vulnerable victim enhancement.  *See United States v. Kimber*, 777 F.3d 553, 564 (2d Cir.), *cert. denied*, 136 S. Ct. 170 (2015) ("We have never held that actual infliction of harm is a prerequisite to the application of a vulnerable victim adjustment.").

[5] We have used the November 2010 version of this guideline, because this version was in effect at the time of Adeolu's conviction in 2014.  Although some of our cases analyze an earlier version of this guideline, any difference is inconsequential and does not alter our analysis.  *See Iannone*, 184 F.3d at 220 n.5 (noting that the guideline's 1998 amendment "does not affect our analysis").

> (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was "a nexus between the victim's vulnerability and the crime's ultimate success."

*Zats*, 298 F.3d at 186 (quoting *Iannone*, 184 F.3d at 220).

The enhancement does not define the word "victim," but a victim is commonly understood to be someone who is "taken advantage of." *Victim*, Webster's Third New International Dictionary (1993). This definition is consistent with our prior interpretation of the vulnerable victim enhancement. In *United States v. Monostra*, we held that "the use of the words 'susceptible' and 'vulnerable' in § 3A1.1 indicates that the enhancement is to be applied when the defendant has taken advantage of the victim's weakness." 125 F.3d 183, 190 (3d Cir. 1997). To determine whether a defendant has taken advantage of a vulnerable victim, we examine whether "there was 'a nexus between the victim's vulnerability and the crime's ultimate success.'" *Iannone*, 184 F.3d at 220 (quoting *Monostra*, 125 F.3d at 190). By requiring a "nexus" between the victim's vulnerability and the defendant's scheme, we assess whether a victim has been "taken advantage of" in a manner that facilitates the defendant's scheme. As such, an analysis of "actual" harm is inconsequential. Any issue regarding the victim's harm is already encompassed within our analysis of the nexus between a victim's vulnerability and the crime's success.

Indeed, "the purpose of § 3A1.1, as we see it, is simply to acknowledge that, while most crimes are committed for other motives, in many instances defendants know or should know of their victim's particular vulnerability and are therefore more blameworthy for knowingly or even

6

negligently harming them." *United States v. Cruz*, 106 F.3d 1134, 1139 (3d Cir. 1997). But a defendant is not more or less blameworthy for the purposes of this enhancement based on the amount of harm that a victim experiences. Applying the enhancement in such a manner would create a disparity in the punishments for defendants who are more successful (and cause more harm) and those who are less successful, despite displaying similar depravity. As the Second Circuit has explained, the interest in punishing a defendant's depravity "is present regardless of whether a defendant who targets a vulnerable victim is ultimately successful; the 'choice of victim demonstrates an extra measure of criminal depravity' in either case." *Kimber*, 777 F.3d at 564 (quoting *United States v. Hershkowitz*, 968 F.2d 1503, 1505 (2d Cir. 1992)). A contrary result would fail to punish a defendant's reprehensible conduct and fail to protect vulnerable members of society by deterring future criminal conduct. *See Zats*, 298 F.3d at 188 ("Our objective is to provide extra deterrence for defendants who are especially likely to succeed in their criminal activities because of the vulnerability of their prey."); *Kimber*, 777 F.3d at 564 ("The adjustment 'reflect[s] the public interest in more severely punishing those whose choice of victim demonstrates an extra measure of criminal depravity.'" (alteration in original) (quoting *Hershkowitz*, 968 F.2d at 1505)); *United States v. Dupre*, 462 F.3d 131, 144 (2d Cir. 2006) ("[A] sentencing judge should 'focus not on the likelihood or extent of harm to the individual if the crime is successful, but on the extent of the individual's ability to protect himself from the crime.'" (quoting *United States v. O'Neil*, 118 F.3d 65, 75 (2d Cir. 1997))).

In light of these policy considerations and our existing test requiring a "nexus" between the victim's vulnerability and the defendant's scheme, there is no need to require a separate showing of "actual" harm.[6] *See, e.g.*, *United States*

---

[6] The application notes for the vulnerable victim enhancement also support our holding that a separate showing of actual harm is not required. The application notes explain that "[t]he adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim." U.S.S.G. § 3A1.1 cmt. n.2. Although

7

*v. Kennedy*, 554 F.3d 415, 419, 423-25 (3d Cir. 2009) (finding that reimbursed accountholders were not "victims" under the fraud enhancement because they suffered no financial loss, but affirming the application of the "vulnerable victim" enhancement without an explicit analysis of whether the accountholders experienced harm).  Therefore, we will continue to apply *Iannone*'s three-part test to determine the applicability of this enhancement.

**B.**

We now turn to our review of the District Court's application of the vulnerable victim enhancement, which we review for clear error.  *Kennedy*, 554 F.3d at 418.  First, we agree that the victims here were "particularly susceptible or vulnerable to the criminal conduct."  *Zats*, 298 F.3d at 187 (quoting *Iannone*, 184 F.3d at 220).  "Victims can be vulnerable for the reasons listed in the application note—age, physical or mental condition—or simply because one is 'otherwise particularly susceptible to the criminal conduct.'"  *Id.* at 187-88 (quoting U.S.S.G. § 3A1.1 cmt. n.2).  To make this determination, we examine "the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime."  *Id.* at 188 (quoting *United States v. McCall*, 174 F.3d 47, 51 (2d Cir. 1998)).  Here, the individuals' youth gave rise to their vulnerability and their inability to protect against Adeolu's

---

this note highlights the difference between a vulnerable victim and the general population, the fraud example illustrates that focusing on whether a victim experienced harm would be misplaced.  There, the enhancement applied because the defendant "marketed an ineffective cancer cure" without regard for whether the victim suffered financial loss, physical harm, or even potential harm stemming from the defendant's conduct.  This supports our understanding that courts should focus on the defendant's exploitative conduct rather than the result of that conduct in determining the applicability of this enhancement.  *See Iannone*, 184 F.3d at 220 ("[T]he note suggests that this enhancement is designed to apply where a defendant knowingly or recklessly exploits a victim's vulnerability in order to facilitate his commission of the crime.").

8

fraudulent scheme. Indeed, our society routinely recognizes the need to protect minors' personal information by requiring redactions of their names, birthdays, and Social Security numbers. Given a child's inability to guard against theft of personal information, we find that the first element of this test is satisfied.

Second, we also agree that Adeolu knew or should have known of the victims' vulnerability. Because their ages were integral to qualifying as dependents, Adeolu knew or should have known that at least one of the children who was fraudulently claimed as a dependent was vulnerable due to age and inability to protect against his conduct. *See id.* at 190 ("[T]he Government need not prove that every, or even most, of Zats' victims were vulnerable or that he knew or should have known of the vulnerabilities in every case. The language of the guideline requires only that 'a victim of the offense was a vulnerable victim.'" (citation omitted) (quoting U.S.S.G. § 3A1.1(b)(1))).

Third and finally, we find that there was a "nexus" between the victims' vulnerability and the success of Adeolu's fraudulent scheme. Although the Sentencing Guidelines do not require that the defendant "target" the victim, "the enhancement may not be applied absent a showing that the victim's vulnerability or susceptibility facilitated the defendant's crime in some manner." *Monostra*, 125 F.3d at 190. Here, Adeolu profited from the sale of his victims' personal information and falsely listed them as dependents because of their youth, showing that Adeolu took advantage of the minors' vulnerability in a manner that facilitated his criminal scheme. *See id.* at 191 ("The enhancement is applied not because the victim draws sympathy from us because of the infirmity, and we simply wish to express extra odium for the act. It is also because the infirmity rendered the victim susceptible to the crime committed upon him."). Therefore, we will affirm the application of the vulnerable victim enhancement.[7]

---

[7] We will also affirm the District Court's application of the four-level leadership enhancement, which is applied "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was

9

## IV.

For the foregoing reasons, we will affirm the District Court's application of the vulnerable victim and leadership enhancements and Adeolu's overall sentence.

---

otherwise extensive." U.S.S.G. § 3B1.1(a). We agree that testimony from an employee, Olugboyega "Remi" Fisher, credibly establishes that Adeolu was the organizer of fraudulent activity involving at least five participants. Lastly, we will affirm the substantive reasonableness of Adeolu's 56-month sentence. *See Kennedy*, 554 F.3d at 418 (reviewing the reasonableness of the defendant's overall sentence for abuse of discretion). The District Court indeed considered mitigating factors in determining Adeolu's sentence, such as his lack of criminal history, his familial and community support, and his intelligence. Thus, we will affirm the entirety of Adeolu's sentence.