**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2166
_____

UNITED STATES OF AMERICA

v.

SETH REHFUSS,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:18-cr-00134-001)
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1
on January 31, 2020

Before: CHAGARES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: April 22, 2020)
_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

Using a fake charity to target senior citizens warrants extra punishment, even if the

scam's profits come from Medicare kickbacks instead of charitable donations or the sen-

iors' own wallets. Seth Rehfuss ran a Medicare-fraud scheme that bilked the Government

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

out of hundreds of thousands of dollars. It used a supposedly charitable organization to persuade seniors to undergo genetic tests that their own doctors never approved. Instead, doctors on the scheme's payroll blindly approved the tests, which were sent to labs in exchange for lucrative kickbacks. Rehfuss pleaded guilty to conspiracy but contests his Sentencing Guidelines enhancements for his leadership role, the scheme's charitable pretense, and its focus on vulnerable older victims. Because the District Court properly applied all three enhancements, we will affirm.

## I. BACKGROUND

### A. The sham charity, needless medical tests, and Medicare kickbacks

Rehfuss and others ran a purported charity called the Good Samaritans of America. As a representative of Good Samaritans, Rehfuss visited senior centers throughout New Jersey to give presentations about senior-citizen benefits like eyeglasses, hearing aids, and prescription drugs. But the Good Samaritans did not provide those benefits; that just got their foot in the door. It was all a ruse to pocket Medicare kickbacks on needless genetic tests.

At the end of his presentations, Rehfuss would scare his audiences by suggesting that they were at risk of heart attacks, strokes, cancer, and even suicide. Unless they got genetic tests, they would not get the "[p]ersonalized medicine" that they supposedly needed to avoid those lethal risks. App. 273. In response, more than a thousand seniors submitted to cheek swabs and gave Rehfuss their Medicare information.

To get the Government to pay a lab to run the tests, the Good Samaritans needed a doctor to approve them. *See* 42 C.F.R. §410.32(a). At first, they made up doctors' contact information and answered referral inquiries themselves. Later, Rehfuss advertised on

Craigslist, recruiting doctors to approve the tests for $2,000 per week for just a couple of hours' work. These doctors never met the seniors, but just rubber-stamped the referrals.

From there, the Good Samaritans submitted the cheek swabs and Medicare-reimbursement forms to one of two labs with which they had kickback agreements. The labs ran the tests and submitted the paperwork to the Government for reimbursement. The Government then sent Medicare reimbursements back to the labs, the labs sent kickbacks to the Good Samaritans, and the Good Samaritans paid the doctors who had approved the tests.

## B. The guilty plea and sentence

After local officials in New Jersey caught on, federal officers arrested and charged Rehfuss with two counts of conspiracy to violate several healthcare statutes. He later pleaded guilty to a single, consolidated conspiracy count.

At sentencing, the Government sought three Guidelines enhancements that are relevant here: a two-level enhancement for targeting vulnerable victims, a two-level enhancement for exploiting a charity's guise for personal gain, and a four-level enhancement for his leadership role in the offense. U.S.S.G. §§ 3A1.1(b)(1), 2B1.1(b)(9)(A), 3B1.1(a). Rehfuss opposed all three.

After considering both sides' arguments, the District Court applied all three enhancements. Then it calculated Rehfuss's Guidelines range at 51 to 63 months' imprisonment. After weighing his pleas for leniency, it sentenced him to 50 months in prison.

3

**C. This appeal**

Rehfuss now appeals all three enhancements. The District Court had jurisdiction under 18 U.S.C. §3231. We have jurisdiction under 18 U.S.C. §3742(a) and 28 U.S.C. §1291. We review the District Court's interpretation of the Guidelines de novo. *United States v. Bell*, 947 F.3d 49, 54 (3d Cir. 2020). Because these enhancements are "predominantly fact-driven," we review their application for clear error. *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (internal quotation marks omitted) (leadership role); *see United States v. Adeolu*, 836 F.3d 330, 334 (3d Cir. 2016) (vulnerable victim); *United States v. Bennett*, 161 F.3d 171, 190 (3d Cir. 1998) (misrepresentation of charity).

## II. THE DISTRICT COURT PROPERLY APPLIED EACH ENHANCEMENT

The District Court interpreted the Guidelines correctly. And we are not left "with the definite and firm conviction" that it misapplied them. *Thung Van Huynh*, 884 F.3d at 168 (quoting *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008)). So all three enhancements were proper.

**A. The scheme preyed on vulnerable older victims**

The District Court properly enhanced Rehfuss's Guidelines range because his scheme targeted older, low-income victims and intimidated them into undergoing genetic tests.

The Guidelines authorize a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. §3A1.1(b)(1). Age counts as a vulnerability. *Id.* cmt. n.2(B). This enhancement applies when the Government shows that at least one victim was vulnerable, that the defendant knew or should

4

have known of that vulnerability, and that vulnerability had some link to the crime's success. *Adeolu*, 836 F.3d at 333. Rehfuss concedes that the seniors who he tested count as victims, even though only Medicare suffered financial harm. Appellant's Br. 6 n.2; *see United States v. Zats*, 298 F.3d 182, 186–87 (3d Cir. 2002).

Rather, Rehfuss argues that the District Court made no "individualized determination" that any victim was particularly vulnerable. Appellant's Br. 10. He objects that the court improperly "relied on an inaccurate 'generalization' that elderly people sometimes" are less alert. Appellant's Br. 11.

That objection is hardly fatal. The District Court did generalize that Rehfuss's elderly victims were susceptible to fraud. But such generalizations, while disfavored, are not forbidden. *Adeolu*, 836 F.3d at 332 n.3; *see United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003) (holding that elderly victims are especially vulnerable to crimes involving their finances). District courts can paint with a broad brush when appropriate.

The District Court was right to do so here for four reasons. First, Rehfuss preyed on more than a thousand seniors, and only one had to be vulnerable for the enhancement to apply. Second, he admitted to targeting Medicare participants living in low-income housing, exactly the kind of victim primed to accept free medical tests. Third, he bypassed the victims' personal doctors, who might have questioned or objected to his tactics. Finally, his presentation worked by scaring seniors into undergoing his test and sharing their personal medical information for fear of lethal conditions associated with aging.

5

In short, he preyed on vulnerabilities linked to his victims' age, health, and income. That "made it easier to [perpetrate] the fraud." *United States v. Hawes*, 523 F.3d 245, 255 (3d Cir. 2008). So the District Court's generalization was not error, let alone clear error.

**B. The charitable guise facilitated the scam**

The District Court also correctly applied a two-level enhancement because Rehfuss "misrepresent[ed] that [he] was acting on behalf of a charitable … organization," when he really "intended to divert all or part of th[e] benefit" for his "personal gain." U.S.S.G. § 2B1.1(b)(9)(A) & cmt. n.8(B). We have upheld the application of this enhancement when the victims would not have engaged with the defendant's charity if they had known that in fact it rested on lies and was exploited for the defendant's own profit. *Bennett*, 161 F.3d at 192.

That is true here. Rehfuss used the Good Samaritans' name and ostensibly charitable mission to persuade senior centers to let him make his presentations and conduct his genetic tests. Had he disclosed his personal financial stake, the centers would likely not have invited him to speak, let alone to test their residents. Without the scheme's charitable pretense, the fraud would not have worked.

Rehfuss does not contest these facts. Rather, he claims that the enhancement does not apply because he never diverted charitable donations, but profited only from the labs' kickbacks. That, he argues, distinguishes his scheme from the examples listed in the enhancement's application notes. *See* U.S.S.G. § 2B1.1 cmt. n.8(B)(i)–(iii).

But as we and many of our sister circuits have recognized, the enhancement itself is much broader than those examples. *See Bennett*, 161 F.3d at 191; *accord United States v.*

6

*Wiant*, 314 F.3d 826, 829 (6th Cir. 2003) (collecting cases). It applies whenever a defendant commits fraud by "misrepresent[ing] that he was conducting an activity wholly on behalf of [a charitable] organization." *United States v. Kinney*, 211 F.3d 13, 20 (2d Cir. 2000) (quoting *United States v. Aramony*, 166 F.3d 655, 664 (4th Cir. 1999)).

That is exactly what Rehfuss did. The District Court thus interpreted and applied this enhancement correctly.

### C. Rehfuss directed the scheme and controlled others

Finally, the District Court did not err in applying an enhancement for Rehfuss's leadership role. A four-level enhancement applies if the defendant was an "organizer or leader" and the crime involved at least five participants. U.S.S.G. § 3B1.1(a). To qualify, the defendant must have had exerted control over at least one other participant. *Id.* cmt. n.2; *United States v. Felton*, 55 F.3d 861, 864 (3d Cir. 1995). One way to prove a leadership role is by showing that the defendant recruited others to join the scheme. U.S.S.G. § 3B1.1 cmt. n.4.

Substantial evidence supports the District Court's finding that Rehfuss was an organizer or leader. For instance, he wrote the script for and gave the presentations at senior centers as the "front man." App. 337. He admitted that he "was key to designing the [scheme's] system." App. 119. He negotiated with the labs for bigger kickbacks. App. 319. And he recruited and controlled other participants, including by advertising for and coordinating with the doctors who responded to his Craigslist posts.

Rehfuss objects that another participant, Sheila Kahl, did not get this enhancement, even though she was equally responsible and split the profits with him. But Kahl gave the

7

Government substantial assistance and got a plea agreement that stipulated that she was a minor player. The court could accept the Government's role stipulation for Kahl, a cooperator, while reviewing the record anew to determine Rehfuss's involvement. *See Thung Van Huynh*, 884 F.3d at 170 n.4.

Rehfuss also objects that he could not have been a leader because he had to take instructions from the directors of the labs and others. But that does not mean that Rehfuss never exercised control over others beneath him. After all, the Guidelines allow multiple people to be leaders or organizers of a conspiracy. U.S.S.G. § 3B1.1 cmt. n.4. And the record confirms Rehfuss's authority in the organization. So the District Court properly applied the leadership enhancement.

\* \* \* \* \*

Seth Rehfuss used a sham charity to scare seniors into undergoing needless genetic tests, bypassing their doctors and pocketing Medicare kickbacks. The District Court properly enhanced his Guidelines range for his leadership role, the scheme's charitable guise, and its focus on vulnerable older victims. Finding no error, we will affirm.