NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-3089

———————

UNITED STATES OF AMERICA

v.

GARY BASRALIAN,

Appellant

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 2-18-cr-00515-001)
District Judge: Honorable Madeline C. Arleo

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
September 21, 2020

Before: AMBRO, PORTER, and ROTH, Circuit Judges

(Opinion filed: February 11, 2021)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, <u>Circuit Judge</u>

Gary Basralian stole over $3.7 million from at least 10 of his clients, some of whom, elderly and widowed, had come to trust him with their life savings. After pleading guilty to wire and investment advisor fraud, the District Court sentenced him to 70 months' imprisonment and ordered him to pay $3.7 million in restitution. He appeals, alleging various errors at his sentencing hearing. None of his claims are persuasive. We thus affirm his sentence.

## I.    Factual and Procedural History

For 28 years Basralian worked as a registered broker, providing investment advisement services to clients for a securities firm that served as national broker-dealer for independent financial advisors. Between 2007 and 2017, he stole, as noted, over $3.7 million from at least 10 clients.

In addition, Basralian made false representations when clients inquired about their account balance, assuring them that he had invested their money in real estate, high interest loans, and securities. Instead, he used their savings to pay his personal credit card bills, home mortgage, car note, and child support. For instance, he told one client, J.L.S—who ultimately lost over $1.3 million—to address checks intended for her investment account to "Master Financial." Basralian deposited these funds into an account he controlled before transferring them to his personal checking account. Ultimately J.L.S's money was used to pay $2,000 in child support, over $7,000 toward his car, and $5,000 to American Express for personal credit card expenses. When another client, C.C.C., who used Basralian to invest her settlement from a serious car

2

accident, inquired about the declines in her account balance, he showed her a spreadsheet with various phantom investments and their projected earnings. Basralian never made these investments but instead diverted funds from C.C.C.'s account for his personal expenses. He once wired $10,000 of CCC's money to an account under his control, then moved most of it into his personal account to pay PetSmart, Bed Bath & Beyond, Trader Joes, and BMW. In total, Basralian stole over $1.7 million from her.

The Government charged Basralian with two counts of wire fraud in violation of 18 U.S.C. §§ 1343 & 2 and one count of investment advisor fraud in violation of 15 U.S.C. § 80b-6, 80b-17. He accepted a guilty plea to one count of wire fraud and one count of investment advisory fraud. At sentencing, the District Court adopted the plea agreement's proposed loss calculation of $1.5 to $3.5 million and applied sentencing enhancements for engaging in criminal conduct involving vulnerable victims and resulting in substantial financial hardship to the victims.[1] The enhancements increased Basralian's offense conduct level to 28 and Guidelines' range to 70-97 months. The Court sentenced him to concurrent terms of 70 months' imprisonment for wire fraud and 60 months' imprisonment for investment advisor fraud, to be followed by two concurrent terms of three years' supervised release. It also ordered him to pay $3,712,595.63 in restitution to his victims. Basralian appeals to us, claiming that the District Court made various errors at his sentencing.

---

[1] The Court also applied an enhancement for involving a violation of securities laws, to which neither party objected.

**II.    Discussion**[2]

Basralian raises four claims on appeal.  None has merit.

1. The Vulnerable Victim Enhancement

First, Basralian argues that the District Court erroneously applied the vulnerable-victim enhancement under the U.S. Sentencing Guidelines § 3A1.1(b)(1) to his sentence without a fact-finding hearing or proof in the record.  "[F]actual findings concerning the vulnerable victim adjustment are reversible only for clear error."  *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002) (citation omitted).  We determine applicability of the enhancement with a three-part test, which asks whether

> (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner[,] that is, there was "a nexus between the victim's vulnerability and the crime's ultimate success."

*United States v. Adeolu*, 836 F.3d 330, 333 (3d Cir. 2018) (quoting *Zats*, 298 F.3d at 186).  "[T]he enhancement may be applied when there is a single vulnerable victim."  *Id.* at 333 n.3.

Letters submitted by some of Basralian's victims provided substantial support for the District Court's application of the vulnerable-victim enhancement.  Relying on those letters, the Court determined that multiple clients qualified.  The first victim found to be vulnerable is a woman in her eighties who suffers from dementia, (although the record does not clearly establish the precise date of the disease's onset).  The second vulnerable

---

[2] The District Court had jurisdiction over this case under 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 3472.

4

victim is a woman who suffered head injuries in a near-death car accident that led to the end of her career, lost her husband in a plane crash, and considered Basralian "a friend and confidant." J.A. 154. In addition, the Court discussed a third potential vulnerable victim, also in her eighties, who thought herself so close to Basralian that he opted to meet with her at her home over homemade cookies rather than his office. There was sufficient evidence in the record at sentencing to establish that these victims relied on Basralian due to their age and life circumstances. *See United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003) ("Elderly victims satisfy the requirements of § 3A1.1(b)(1), especially when their financial investments and financial security are at issue."). Basralian knew his clients and their life stories. Their letters state the tremendous trust they placed in him over decades. As the Court had enough evidence to conclude that he preyed on at least some of his victims' known vulnerabilities to facilitate his crimes, we see no error.

2. The Calculation of Restitution

Next, Basralian argues that the District Court failed to subtract from the restitution amount sums awarded to one of his victims in a FINRA (Financial Industry Regulatory Authority) enforcement proceeding. "[W]e review specific awards of restitution for abuse of discretion." *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999). Basralian correctly asserts that, after a total restitution is determined, the defendant is entitled to have the amount reduced by any sums already recovered by a victim as compensatory damages in a state or federal civil proceeding. *See* 18 U.S.C. § 3664(j)(2). But, as the defendant, he bore the burden of establishing that he deserved this offset.

5

*United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011). Basralian did not request an offset in his objections to the draft PSR or in his sentencing submission to the District Court. When he objected for the first time at his sentencing hearing, the District Court was clear that it would "not chang[e] the restitution amount absent some authority to do so[,]" and instructed him to submit additional briefing on the issue. J.A 87. Basralian never submitted additional evidence showing the offset was appropriate; thus the Court did not abuse its discretion in denying his unsupported request.

   3. The Alleged *Ex Parte* Communication

Third, Basralian claims that the District Court violated his due process rights by obtaining factual information related to his sentence *ex parte* and failing to disclose it in violation of Federal Rule of Criminal Procedure 32(i)(1)(B), which requires courts to provide the parties a summary, either written or *in camera*, of any information it relies on from the probation office outside of the presentence report. Basralian fails to provide support for this allegation. The Government's sentencing submission alleged that he had not been forthcoming with probation about several assets and sources of funds for restitution. Prior to taking the bench for the sentencing hearing, the Court called the probation officer into its chambers to ask about Basralian's undisclosed assets. When the probation officer did not have the answers, the Court summoned the Government to inquire whether it had additional information regarding the assets. When it did not, the Court called Basralian's lawyer and asked if he could provide the missing information. Ultimately, Basralian answered the Court's questions on the record. After the Court explained why it had spoken with parole and both parties' counsel in chambers,

6

Basralian's lawyer again inquired about the Court's *ex parte* communication.  It

responded that

> [t]he only facts that will be considered were the facts you just placed on the record . . . . The present [p]robation [o]fficer didn't have any facts.  The Government had no facts.  I called you in and you were kind enough to provide the Court facts . . . . There were no . . . ex parte communications. I assured you that in chambers, and I assure you that today on the record.

J.A. 65–66.  Basralian does not introduce any information that would encourage us to

second guess the District Court's words.  Thus this claim also fails.

   4.  The Reasonableness of the Sentence

Finally, Basralian claims that his sentence was procedurally and substantively

unreasonable because the probation officer did not interview his current wife.  A

sentencing court's "failure to give meaningful consideration to any [colorable sentencing]

argument renders a sentence procedurally unreasonable which, when appealed, generally

requires a remand for resentencing."  *United States v. Flores-Mejia*, 759 F.3d 253, 256

(3d Cir. 2014) (*en banc*).  Here the record shows that the District Court considered letters

from his "present wife" as well as "from family, friends, and colleagues."  J.A. 34.  Later,

the District Court reiterated "I have read his wife's letter to the Court, and I take that into

consideration, and I have read his letter and his lengthy explanation of his marriage, and I

take that into consideration too."  J.A. 60.  The record contradicts Basralian's claim that

the Court failed to consider his evidence.  Thus there was no error.

We affirm a sentence as substantively reasonable unless "no reasonable sentencing

court would have imposed the same sentence on that particular defendant for the reasons

the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (*en*

7

*banc*) (citation omitted). Basralian's Guidelines' range was 78 to 97 months. The District Court imposed a 70-month term of imprisonment, explaining it was acting leniently due to his age, history of depression, and physical ailments, but it was "not inclined to depart greatly from the Guidelines" given the "very important" enhancements for the vulnerability of the victims and the substantial financial hardship they endured. J.A. 84. As the Court fully explained itself and acted reasonably, it did not abuse its discretion in sentencing Basralian.

\*     \*     \*     \*     \*

As all of Basralian's claims fail, we affirm his sentence.