**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 21-2547

———————————

UNITED STATES OF AMERICA,

v.

WAYDE MCKELVY
Appellant

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cr-00398-003)
District Judge: Honorable Joel H. Slomsky

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 18, 2022.

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: November 21, 2022)

———————————

**OPINION***

———————————

**Krause**, *Circuit Judge*.

Wayde McKelvy challenges his conviction and sentence for wire fraud, securities

fraud, and related offenses in violation of 18 U.S.C. §§ 2, 371, 1343 and 15 U.S.C.

§§ 78j(b), 78ff in connection with his role in a multimillion-dollar Ponzi scheme. We

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

discern no error and will affirm.

## I.    BACKGROUND

The Ponzi scheme started in 2005 when McKelvy's codefendants—Troy Wragg and later Amanda Knorr—organized and began to operate Mantria Corp. It masqueraded as a successful real-estate development firm by building a few roads and a model house on virtually uninhabitable land to dupe investors into believing the area would become a thriving subdivision. Wragg bolstered the illusion of progress by establishing Mantria Financial, a Tennessee-licensed lender that provided mortgages on Mantria Corp.'s land. Borrowers happily entered these mortgages due to their inordinately favorable terms, including $3,000 cash bonuses and the ability to walk away if the land did not appreciate within two years. These mortgages created the appearance of growth, but in reality Mantria Financial lost money on every loan it originated; the land never increased in value, so none of Mantria Financial's borrowers repaid their mortgages. Mantria Financial nevertheless issued securities to unwitting investors.

Mantria initially struggled to attract victims, so Wragg recruited McKelvy to tout Mantria Financial's worthless securities. McKelvy did so at his "Speed of Wealth" seminars, in which he misrepresented Mantria's viability and expected returns and urged attendees to withdraw retirement savings, max out credit cards, and take out second mortgages to invest in the Ponzi scheme. McKelvy also assured his audience that he was "deeply involved in Mantria," as he "kn[e]w where all the money [was] going," and held himself out as Wragg's "partner" in the business. J.A. 596. Unfortunately, attendees heeded McKelvy's advice, with many liquidating their retirement savings and assuming

2

new debts so they could invest in Mantria Financial.

When the SEC filed an enforcement action against Mantria, the Ponzi scheme collapsed. The Government subsequently indicted Wragg, Knorr, and McKelvy for wire- and securities-fraud offenses. Knorr and Wragg pled guilty. McKelvy instead proceeded to trial, where a jury found him guilty on all counts. After denying his motion for judgment of acquittal, the District Court sentenced McKelvy to 216 months' imprisonment.

## II.  DISCUSSION[1]

McKelvy challenges the District Court's denial of his motion for judgment of acquittal on his wire-fraud convictions as time-barred and contests the procedural and substantive reasonableness of his sentence. But neither of McKelvy's objections entitles him to relief.

### A.  Motion for Judgment of Acquittal

McKelvy contends the District Court erred in denying his motion for judgment of acquittal on the wire fraud counts because they were time-barred. Although the default statute of limitations for federal crimes is five years, 18 U.S.C. § 3282(a), wire-fraud offenses have a ten-year statute of limitations "if the offense affects a financial institution,"

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the denial of a motion for judgment of acquittal de novo and apply the same standard as the district court, viewing the record in the light most favorable to the Government. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). On sentencing issues, we defer to the district court's factual findings "and reverse only for clear error" but consider legal rulings de novo. *United States v. Bierley*, 922 F.2d 1061, 1064 (3d Cir. 1990). We assess the reasonableness of a sentence for abuse of discretion. *United States v. Pawlowski*, 27 F.4th 897, 911 (3d Cir. 2022).

*id.* § 3293(2). According to McKelvy, the Ponzi scheme did not affect a financial institution, so the extended statute of limitations was inapplicable. We disagree.

Mantria Financial is a "financial institution," specifically a "mortgage lending business," *id.* § 20(10), because it "finance[d] . . . debt secured by an interest in real estate," *id.* § 27. A financial institution need not be "the *object* of fraud" for § 3293(2) to apply, *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992), so it is immaterial that Mantria Financial "played an active part in the scheme," *United States v. Serpico*, 320 F.3d 691, 695 (7th Cir. 2003); *see also United States v. Heinz*, 790 F.3d 365, 367 (2d Cir. 2015). The fraud affected Mantria Financial because the scheme required it to issue unprofitable loans to simulate demand, and it was ultimately liquidated as a result of the SEC enforcement action against the Ponzi scheme. *See United States v. Mullins*, 613 F.3d 1273, 1279 (10th Cir. 2010) (Gorsuch, J.) (explaining a fraud affects a financial institution when it "exposed [the] institution to a new or increased risk of loss").

The fraud affected other financial institutions as well. At McKelvy's trial, two victims testified that they struggled to repay the "insured depository institution[s]," 18 U.S.C. § 20(1), that had loaned these victims the funds they invested in Mantria's valueless securities. Thus, the Ponzi scheme affected those lenders by increasing the risk that McKelvy's victims would default.

Because the fraud affected multiple financial institutions, the wire-fraud counts were subject to a ten-year statute of limitations, *see* 18 U.S.C. § 3293(2), and McKelvy's contention that the five-year statute of limitations rendered them untimely is incorrect.

4

### B. Reasonableness of McKelvy's Sentence

McKelvy's objections to the procedural and substantive reasonableness of his sentence are also unavailing. A sentence is procedurally reasonable if the district court applies the appropriate enhancements and deductions under the Sentencing Guidelines and weighs the sentencing factors under 18 U.S.C. § 3553(a). *United States v. Seibert*, 971 F.3d 396, 399 (3d Cir. 2020). A procedurally reasonable sentence is also substantively reasonable unless "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Shah*, 43 F.4th 356, 367 (3d Cir. 2022) (quoting *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc)).

Here, there was no procedural error. The District Court properly applied the guideline enhancement for offenses that jeopardize the safety and soundness of a financial institution, U.S.S.G. § 2B1.1(b)(17)(B)(i), because the fraud did indeed affect a financial institution, as discussed above. Nor was there error in the District Court's enhancement under U.S.S.G. § 3A1.1(b)(1) for McKelvy's targeting of victims. As McKelvy was undoubtedly aware, having held many seminars in person and having spoken directly with audience members, many of them were born in the 1920s, 1930s, and 1940s, and all were sufficiently unsophisticated to follow McKelvy's advice to liquidate their retirement savings and assume substantial debts to invest in the risky securities of a single company. *See United States v. Adeolu*, 836 F.3d 330, 333 (3d Cir. 2016).

The District Court also correctly determined that McKelvy was not entitled to a downward adjustment under U.S.S.G. § 3B1.2 because he was not a minimal or minor

participant in the fraud. District courts have "broad discretion in applying this section, and their rulings are left largely undisturbed by the courts of appeal," *United States v. Self*, 681 F.3d 190, 201 (3d Cir. 2012) (quoting *United States v. Isaza-Zapata*, 148 F.3d 236, 238 (3d Cir. 1998)), and the District Court here did not abuse that discretion in light of McKelvy's close relationship with Wragg, indispensable role in recruiting investors, and awareness of Mantria's true financial condition, *see id.* Finally, the District Court did not err in failing to consider under 18 U.S.C. § 3553(a)(6) whether McKelvy's sentence would create unwarranted disparities with his codefendants because "a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Douglas*, 885 F.3d 145, 153 n.6 (3d Cir. 2018) (same).

The sentence imposed by the District Court was also substantively reasonable. McKelvy's argument to the contrary is that the sentence exceeded the Court's stated reason for incarceration, namely specific deterrence. But he ignores the other reasons the Court articulated: promoting respect for the law and deterring others from engaging in similar misconduct. As we explained in *Tomko*, "[t]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." 562 F.3d at 568 (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir.2007) (en banc)). Here, the District Court appropriately emphasized the need to promote respect for the law and deterrence in light of the seriousness of McKelvy's offense—"a $54 million Ponzi scheme that affect[ed] 300 victims" and "was motivated by greed[.]" J.A. 633, 638. Considering these circumstances, McKelvy has not

6

established that "no reasonable sentencing court would have imposed" his sentence. *Shah*, 43 F.4th at 367 (quoting *Tomko*, 562 F.3d at 568).

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.