**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1133 & No. 24-1144
_____

UNITED STATES OF AMERICA

v.

TAREK BOUANANE
Appellant in 24-1133

&

RODERICK FEURTADO
Appellant in 24-1144
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2:21-cr-00476-001, 2:21-cr-00476-002)
District Judge: Honorable J. Nicholas Ranjan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 9, 2025

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges.*

(Filed: April 14, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

## I

Appellants Tarek Bouanane and Roderick Feurtado were members of a criminal wire fraud conspiracy that scammed elderly Pittsburgh residents out of hundreds of thousands of dollars. The group's method—a so-called "grandparent scam"—worked like this. First, the group's leaders would identify targets, typically elderly citizens with close relationships with their adult grandchildren. One scammer would call the target, pretending to be their grandchild. The "grandchild" would explain that he was in legal trouble—often, the story was that he was involved in a serious car accident with a pregnant woman and was now facing criminal charges. Another scammer would then come on the line posing as the grandchild's lawyer. The "lawyer" would explain that the grandparent could help by posting a cash bond, freeing their loved one from jail. And, by happy coincidence, the "lawyer" had a bail bondsman in the area that could personally pick up the cash. But, the "lawyer" cautioned, the judge in the case had imposed a strict gag order, so the grandparent could not speak about the situation to anyone.

Bouanane was one of the "bail bondsmen." Once a target was on the hook, Bouanane would scope out the area, park around the corner, ring the doorbell, collect as much cash as he could from the victim, then make his escape—sometimes at a dead run.

Feurtado recruited and managed Bouanane and other "bail bondsmen." He would direct the "bondsmen" to their targets, collect the take from successful "runs," then convert the cash to digital currency and transmit it back to the conspiracy leaders.

2

Bouanane kept eight percent of what he personally picked up, plus expenses; Feurtado kept three percent of the combined take from all successful "runs." The group collected over $250,000 from victims, with Bouanane personally responsible for about $140,000 of the total.

Both men were indicted on counts of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349. Both men went to trial and were found guilty by a jury of their peers. The District Court sentenced Bouanane to 46 months' imprisonment—the top of his calculated Guideline range—and Feurtado to 120 months' imprisonment—a sua sponte upward variance of 23 months above his calculated Guideline range.

Bouanane and Feurtado appealed their sentences. Both men challenge the District Court's application of certain sentencing factors in calculating their Guideline ranges, and Feurtado separately challenges the substantive reasonableness of his sentence.

II[1]

A. Guideline Provisions

Both Bouanane and Feurtado challenge the District Court's application of a two-level upward "vulnerable victim" adjustment. U.S.S.G. § 3A1.1(b)(1). Bouanane also challenges the Court's refusal to apply a downward adjustment for minor or minimal

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

participants, § 3B1.2, and a two-level decrease for certain defendants with zero criminal history points, § 4C1.1.

We review the District Court's legal interpretations of the Sentencing Guidelines de novo and its application of the Guidelines for clear error. *United States v. Adeolu*, 836 F.3d 330, 332 (3d Cir. 2016).

1. Vulnerable Victim

U.S.S.G. § 3A1.1(b)(1) allows for a two-level upward adjustment if a known victim of the offense was a "vulnerable victim." The provision applies where:

> "(1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was a nexus between the victim's vulnerability and the crime's ultimate success."

*Adeolu*, 836 F.3d at 333 (quoting *United States v. Zats*, 298 F.3d 182, 186 (3d Cir. 2002)). "What matters is not whether [the defendant] wanted to exploit vulnerable victims, but whether he knew or should have known that he was doing so." *Zats*, 298 F.3d at 189.

"Victims can be vulnerable for the reasons listed in the application note—age, physical or mental condition—or simply because one is 'otherwise particularly susceptible to the criminal conduct.'" *Id.* at 187–88 (quoting U.S.S.G. § 3A1.1 cmt. n.2). The inquiry is fact-heavy and context-dependent; the focus is "the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims

4

of the same crime." *Id.* at 188 (quoting *United States v. McCall*, 174 F.3d 47, 51 (2d Cir. 1998)).

Appellants argue that the District Court improperly applied this adjustment based merely on the fact that the victims were elderly, and that such a categorical approach falls short of the necessary finding of individual susceptibility. Bouanane argues that, though elderly, many of the victims were "sophisticated, intelligent people," "strong willed [and] competent individuals." Bouanane Op. Br. 14. Feurtado argues that the record does not reflect that he knew or had any reason to know of any specific characteristics of the victims that would render them particularly susceptible to the fraud, as Feurtado, unlike Bouanane, never interacted directly with any victims.

The District Court explained its reasoning in a pair of "Tentative Findings & Rulings" documents. After citing the three-prong test from *Adeolu*, the Court noted that while "not all elderly victims are more susceptible to fraud," specific victims "can be particularly vulnerable and susceptible to fraud due to their age." Bouanane App. 414–15; Feurtado App. 894–95 (citing *United States v. Seligsohn*, 981 F.2d 1418, 1426 (3d Cir. 1992)). The Court found that the victims here were particularly vulnerable, not just because of their age, but "because they were grandparents and the conspirators preyed on this knowledge, in part, by posing as the victims' grandchildren." Bouanane App. 415. The Court then found, "based on . . . credible trial testimony," that the Appellants knew or should have known that their victims were vulnerable in this way. Bouanane App. 415; Feurtado App. 895. Indeed, the very nature of the scheme—as both men knew—*revolved* around identifying and exploiting those relational vulnerabilities. *See United States v.*

5

*Astorri*, 923 F.2d 1052, 1055 (3d Cir. 1991) (affirming application of vulnerable victim adjustment where defendant preyed on the close relationship between his girlfriend and her parents to further a fraud scheme).

The District Court applied the appropriate legal standard and committed no clear error in doing so. We will affirm its application of the "vulnerable victim" adjustment to both Appellants.

2. Minor or Minimal Participant

U.S.S.G. § 3B1.2 allows for offense level downward adjustments based on a defendant's mitigating role in the offense: two levels for minor participants, four levels for minimal participants, and three levels for participation falling somewhere in between. Factors for gauging participation include: "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture." *United States v. Womack*, 55 F.4th 219, 244 (3d Cir. 2022) (quoting *United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001)). We allow district courts "broad discretion" in applying this adjustment, and "their rulings are left largely undisturbed by the courts of appeal." *Id.* (quoting *United States v. Isaza-Zapata*, 148 F.3d 236, 238 (3d Cir. 1998)).

Bouanane argued for this adjustment at sentencing, and the District Court explained its reasoning on the issue in detail. The Court found that Bouanane (1) communicated with other members of the conspiracy enough to understand the "critical components of the scope and structure" of the scheme; (2) did not have a role in planning

or organizing; (3) exercised some decision-making authority in performing his part of the scam; (4) played a critical role in the overall operation of the scheme; and (5) received a percentage cut of the take, rather than a flat fee. Bouanane App. 440–42. These findings led the Court to conclude that Bouanane was "the average participant[]" in the scheme— not a mere courier as he suggested—which did not warrant a downward adjustment for his role.[2] *Id.*

On appeal, Bouanane quibbles with the District Court's reading of the facts. For example, as to his understanding of the scheme, Bouanane alleges that he "was in the dark as to most details of the operation." Bouanane Op. Br. 12. While the District Court found that Bouanane exercised some decision-making authority, Bouanane argues that it was "very little" and that he "did not influence the exercise of decision-making authority." *Id.* Bouanane thus argues that a minimal role adjustment of four levels would have been appropriate. Whatever merit there may be to Bouanane's proposed read of the record, the District Court did not clearly err in its understanding of the facts and its decision not to apply either adjustment. We will therefore leave its judgment undisturbed and affirm.

3. Zero-Point Offender

U.S.S.G. § 4C1.1 allows for a two-level downward adjustment for certain offenders with zero criminal history points. To be eligible, a defendant must meet an enumerated list of criteria. Relevant here, the defendant must not have "receive[d] an

---

[2] By contrast, Feurtado received a three-level upward adjustment for his managing role in the conspiracy.

adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim)."
§ 4C1.1(a)(9). Consistent with our ruling above upholding the application of the vulnerable victim provision, we will affirm the District Court's decision not to apply the Zero-Point Offender adjustment to Bouanane.

B. Substantive Reasonableness

We review the substantive reasonableness of a District Court's judgment of sentence for abuse of discretion, and we will overturn only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

After resolving objections, the District Court calculated Feurtado's Guideline range at 78 to 97 months' imprisonment. The government recommended a sentence at the top of the range. But after considering the factors dictated by 18 U.S.C. § 3553(a), the Court concluded that this was one of the "rare cases" where the guideline range did not reflect an appropriate sentence. Feurtado App. 942. The Court specifically highlighted (1) the seriousness of the crime, including its impact on the victims and Feurtado's managing role; (2) specific deterrence, given Feurtado's extensive (though non-criminal) history of engaging in "schemes or scams or hustles or pyramid schemes"; and (3) general deterrence. *Id.* at 938–43. Accordingly, the Court varied upward, imposing a sentence of 120 months' imprisonment.

Feurtado argues that many of the District Court's concerns were adequately addressed in the Guidelines, and thereby accounted for in the Guideline range. He also

urges us to weigh certain factors differently than did the District Court: though serious, his crime "did not involve any weapons, drugs, or violence"; as a foreign national, he may face removal after serving his sentence; he is of "relatively advanced age . . . and has significant health problems"; he had a criminal history score of zero; and the "vast bulk of the [defrauded] funds . . . were recovered by law enforcement." Feurtado Op. Br. 15–16.

But even if we would have weighed the evidence differently, we cannot say that "no reasonable sentencing court" would have reached the same conclusion as did the District Court here. *Tomko*, 562 F.3d at 568. The District Court conducted a careful review of the record and demonstrated "rational and meaningful consideration" of the § 3553(a) factors. *Id.* (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). The Court acted well within its discretion in varying upward after its review led it to conclude that this was the "rare case[]" where a Guideline range sentence was not sufficient to further the purposes of sentencing. Feurtado App. 942. *See also United States v. Seibert*, 971 F.3d 396, 402 (3d Cir. 2020) ("'[A] district court's failure to give mitigating factors the weight a defendant contends they deserve' does not make a sentence substantively unreasonable." (quoting *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007))). Accordingly, we conclude that the District Court did not abuse its discretion.

\* \* \*

9

III

For the reasons discussed above, we will affirm the District Court's sentencing determinations and judgments as to both Bouanane and Feurtado.