13-4770-cr
*United States v. Getto*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of September, two thousand fourteen.

PRESENT:   PIERRE N. LEVAL,
           DENNY CHIN,
           SUSAN L. CARNEY,
                     *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                     *Appellee*,

                     v.                                        13-4770-cr

MATTHEW GETTO,
                     *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                     Margaret S. Graham, Michael A. Levy,
                                  Assistant United States Attorneys, *for* Preet
                                  Bharara, United States Attorney for the
                                  Southern District of New York, New York,
                                  New York.

FOR DEFENDANT-APPELLANT:     Stephanie M. Carvlin, Law Office of Stephanie M. Carvlin, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Baer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On October 28, 2010, following a bench trial on stipulated facts, defendant-appellant Matthew Getto was found guilty of conspiracy to commit wire fraud and mail fraud through telemarketing, in violation of 18 U.S.C. §§ 1349 and 2326(2).  On March 25, 2011, the district court sentenced Getto principally to 150 months' imprisonment, ordered restitution in the amount of $8.2 million, and ordered forfeiture of $10 million.  On appeal, we affirmed Getto's conviction, but concluded that the district court committed procedural error by failing to make "the required particularized findings" as to the number of victims and the loss amount attributable to Getto.  *United States v. Getto*, 729 F.3d 221, 224, 234 (2d Cir. 2013).  Accordingly, we remanded the case for resentencing.  *See id.* at 235.

On remand, the district court sentenced Getto principally to 144 months' imprisonment, and imposed $8.2 million in restitution and $8.2 million in forfeiture.  Getto appeals from the judgment of conviction entered on December 16, 2013, arguing that the district court committed procedural error in imposing his sentence.  We assume

- 2 -

the parties' familiarity with the facts, the procedural history, and the issues presented for review.

## A.    *Applicable Law*

"We review a sentence for procedural . . . reasonableness under a 'deferential abuse-of-discretion standard.'"  *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).  A district court commits procedural error when, among other things, it "makes a mistake in its Guidelines calculation" or "rests its sentence on a clearly erroneous finding of fact." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008).  "Where we identify procedural error in a sentence, but the record indicates clearly that 'the district court would have imposed the same sentence' in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (quoting *Cavera*, 550 F.3d at 197).

"Loss for purposes of the fraud guideline [of the United States Sentencing Guidelines] . . . is defined as 'the greater of actual loss or intended loss.'"  *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 103 (2d Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. 3(A)).  "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense," U.S.S.G. § 2B1.1 cmt. 3(A)(i), whereas "'[i]ntended loss' . . . means the pecuniary harm that was intended to result from the offense," *id.* § 2B1.1 cmt. 3(A)(ii). In determining loss, "[t]he sentencing court is only required to make a 'reasonable

- 3 -

estimate of the loss.'" *United States v. Lacey*, 699 F.3d 710, 719 (2d Cir. 2012) (quoting U.S.S.G. § 2B1.1 cmt. 3(C)).

Under the Guidelines, "[t]he vulnerable victim enhancement applies where 'the defendant knew or should have known that a victim of the offense was a vulnerable victim.'" *United States v. Kerley*, 544 F.3d 172, 180 (2d Cir. 2008) (quoting U.S.S.G. § 3A1.1(b)(1)). "A 'vulnerable victim' is defined as one 'who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.'" *Id.* (quoting U.S.S.G. § 3A1.1 cmt. 2). The vulnerability of the victim "must bear some nexus to the criminal conduct" and "the defendant generally must have singled out the vulnerable victims from a larger class of potential victims." *United States v. McCall*, 174 F.3d 47, 50 (2d Cir. 1998). Moreover, although "[a]n inquiry into a victim's vulnerability must be individualized and must not be based on broad generalizations about victims based upon their membership in a class," *Kerley*, 544 F.3d at 180 (internal quotation marks omitted), "class membership alone may be sufficient to support the enhancement" when "the criminal shapes the nature of the crime . . . to target a class of victims that are virtually all particularly vulnerable to that crime," *McCall*, 174 F.3d at 51.

**B.**  *Application*

Getto makes several challenges to the procedural reasonableness of his sentence.

First, Getto argues that the district court committed procedural error by failing to make specific factual findings to support the amount of loss attributable to him. We disagree. On remand, the district court applied an 18-level enhancement for loss, after concluding that the loss attributable to Getto was between $2.5 million to $7 million. *See* U.S.S.G. § 2B1.1(b)(1)(J). To make this determination, the district court relied on Getto's admission in the Presentence Report that "the amount of loss that should be attributed to [him was] between one and two and a half million dollars. Zero from [a site he knew was operating a fraudulent scheme, but in which he did not participate], [$]1[.]65 million from [a site from which he and others operated a fraudulent scheme], [and] [$]630,000 from [a site where he managed a fraudulent scheme]." App. at 268 (quoting PSR ¶ 30). On appeal, the parties agree that Getto admitted only $2.28 million in loss attributable to him, which would have placed him in the $1 million to $2.5 million category pursuant to U.S.S.G. § 2B1.1(b)(1), for which a 16-level enhancement applies. *See* U.S.S.G. § 2B1.1(b)(1)(I). The district court, however, construed Getto's statement as admitting to $2.5 million in loss, and the district court therefore erred in concluding that Getto's admission placed him in the $2.5 million to $7 million category.

Nevertheless, we conclude that because "the record indicates clearly that 'the district court would have imposed the same sentence,'" the error was "harmless." *Jass*, 569 F.3d at 68 (quoting *Cavera*, 550 F.3d at 197). We are confident that the district

court found more than $2.5 million in losses. While Getto admitted loss of only $2.28 million, the record shows -- and the district court found -- that the intended loss was far greater. The Government argued at sentencing that the "intended loss [was] far in excess of [$]7 million" based on "all the leads, all the phone calls, [and] . . . the video showing . . . Getto dividing the[ ] leads among various co-conspirators." App. at 279. The district court stated, in turn, that it was "prepared to indicate not only that the scope included far more th[a]n the two-and-a[-]half-plus million that [it] . . . us[ed] for [its] guideline calculation, but certainly that there were, in fact, any number of phone calls that were made between the various [sites] as well as the video." *Id.* Finally, the district court explained that it applied an 18-level enhancement, rather than the 20-level enhancement that the PSR recommended, even though "in fact, there isn't much question . . . that the intended loss was far greater." *Id.* at 290. In light of these findings, we conclude there is no "need to vacate the sentence and to remand the case for resentencing" because the district court's misinterpretation of Getto's admission was harmless. *Jass*, 569 F.3d at 68.

Second, Getto argues the district court erred in imposing a vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b). We disagree. In applying the enhancement, the district court observed that "older people are indeed vulnerable to this kind of scam." App. at 290. It then found that here "there [was] evidence to the effect that [Getto and his co-conspirators] would actually look for people who were not

only 70 or 80 years old . . . . but, in fact, there [was] some proof to the effect that [Getto] would actually look for people who had problems of one sort or another in the reasoning world, and focus in on them." *Id.* at 290-91. Indeed, before applying the enhancement, the district court heard testimony from Joan Vogel that her mother, a victim of Getto's schemes, suffered from dementia. The district court, then, did not make "broad generalizations about victims based upon their membership in a class." *Kerley*, 544 F.3d at 180 (internal quotation marks omitted). Rather, it found that, because of their age and mental state, the vulnerability of Getto's victims bore "some nexus to the criminal conduct," and that Getto "singled [them] out . . . from a larger class of potential victims." *McCall*, 174 F.3d at 50. Accordingly, the application of a vulnerable victim enhancement was appropriate.

Third, Getto claims that the district court erred in refusing to consider his sentencing disparity argument. As an initial matter, we note that "a district court may -- but is not required to -- consider sentencing disparity among co-defendants under 18 U.S.C. § 3553(a)(6)." *United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009). Moreover, Getto's claim is belied by the record. The district court discussed defense counsel's position that Getto deserved leniency because his extradited co-conspirators would serve only two-thirds of their sentences in Israel, whereas Getto would likely serve his full sentence in the United States. Accordingly, the district court did not refuse to

consider the argument. It simply was not persuaded that these circumstances warranted a lighter sentence.

Fourth, Getto argues that the district court impermissibly treated Getto's first sentence as a "baseline" at resentencing. Again, this argument is contrary to the record. The district court did not adhere to its previous findings on, among other things, the loss attributable to Getto's schemes. It calculated a lower offense level under the Guidelines and it imposed a lower sentence. Getto's claim that the original sentence was a "baseline" for his current sentence fails.

Finally, Getto argues that the district court erred in imposing restitution and forfeiture amounts of $8.2 million each, because it did not make particularized findings as to whether the scope of Getto's conspiratorial agreement, as opposed to the overall conspiracy, resulted in these losses. Getto failed to make this argument at the time of his initial appeal. Because it was "ripe for review" then, Getto waived the argument and we do not consider it here. *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal quotation marks omitted).

We have reviewed Getto's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk