22-331-cr
United States v. Vinales

# United States Court of Appeals
# for the Second Circuit

August Term, 2022

(Submitted: June 28, 2023          Decided: August 29, 2023)

Docket No. 22-331-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

BRYAN VINALES, aka TIANO,

*Defendant-Appellant*.

_____

Before:

LYNCH, LOHIER, and BIANCO, *Circuit Judges*.

In this sentencing appeal, Bryan Vinales challenges the District Court's application of a two-level enhancement under § 2D1.1(b)(12) of the United States Sentencing Guidelines, which applies when a defendant has "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The principal question presented is whether the enhancement applies to defendants who use their personal residence to manufacture or distribute a controlled substance. Here, Vinales maintained an apartment where he had at one point lived for the purpose of distributing controlled substances. We conclude that the commentary to § 2D1.1(b)(12) supports the enhancement under the facts of this case. Vinales's other challenges to his sentence are unavailing. AFFIRMED.

Daniel E. Cummings, Sandra S. Glover, Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee*.

Elizabeth M. Johnson, New York, NY, *for Defendant-Appellant*.

PER CURIAM:

Section 2D1.1(b)(12) of the United States Sentencing Guidelines requires a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The appellant, Bryan Vinales, asks us to consider whether the enhancement extends to the mixed use of a premise as both a personal residence and a drug house. We need not do so to resolve this appeal because the record supports the District Court's finding that the relevant premises were used by Vinales "for the purpose of manufacturing or distributing a controlled substance" after he stopped residing there. Id. Vinales also argues that the District Court improperly refused to give effect to the parties' plea agreement by departing downward from the applicable Guidelines range. We disagree and conclude that the District Court could impose a sentence within the applicable

2

range notwithstanding the parties' lower Guidelines calculation as reflected in the agreement. We therefore **AFFIRM**.

## BACKGROUND

The Drug Enforcement Administration (DEA) began investigating a heroin trafficking ring in Waterbury, Connecticut in 2019. As part of its investigation, the DEA made six controlled drug buys between February 2020 and June 2020 from Vinales and from a minor working for Vinales. The buys took place at or outside of an apartment on Willow Street in Waterbury ("the Willow Street premises"). During each of these buys outside the Willow Street premises, DEA agents or a confidential source working for the DEA saw Vinales or the minor enter the apartment after meeting the buyer and before handing them the drugs. The DEA later determined that Vinales was listed on utility bills as a resident of the Willow Street premises.

On July 15, 2020, the DEA arrested Vinales at a different address. The same day, the agency executed a search warrant at the Willow Street premises and seized a large quantity of a mixture containing fentanyl and a digital scale, which can be associated with illegal drug trafficking. Vinales admitted that he

used to live at the Willow Street premises and sold heroin and crack cocaine from there but explained that he had moved out by the time of his arrest.

Vinales eventually pleaded guilty to conspiracy to sell heroin and fentanyl. His plea agreement with the Government included a Guidelines estimate of 57 to 71 months' imprisonment.[1] The Probation Office disagreed with the estimate, pointing to Vinales's use of the Willow Street premises. It recommended a two-level enhancement to the offence level under § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance," which would result instead in a Guidelines range of 70 to 87 months — higher than the parties' agreed range.

At sentencing, Vinales argued that the drug-distribution premises enhancement should not apply because, among other things, he had lived at the Willow Street premises and no drugs were ever packaged or manufactured there. The Government agreed, explaining that it did not seek the enhancement because Vinales had "for a time" lived at the premises and the Government was not "able to prove by a preponderance that [Vinales] was using [the premises] exclusively or predominantly for the drug sales." App'x 92–93.

---

[1] Vinales initially argued that he fell within a lower Criminal History Category, resulting in a shorter Guidelines range. He later conceded otherwise.

The United States District Court for the District of Connecticut (Bryant, J.) rejected the parties' arguments on this point and concluded that the two-level enhancement applied, yielding a Guidelines range of 70 to 87 months. After considering the factors listed in 18 U.S.C. § 3553(a), however, the District Court imposed a non-Guidelines sentence of 60 months' imprisonment followed by three years of supervised release. Neither party objected to the sentence imposed.

**DISCUSSION**

Both of Vinales's arguments on appeal challenge his sentence as procedurally unreasonable. "We review the procedural . . . reasonableness of a sentence under a deferential abuse-of-discretion standard." United States v. Yilmaz, 910 F.3d 686, 688 (2d Cir. 2018). "This standard incorporates de novo review of questions of law, including our interpretation of the Guidelines, and clear error review of questions of fact." Id. "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly

5

erroneous facts, or fails adequately to explain the chosen sentence." United

States v. Singh, 877 F.3d 107, 115 (2d Cir. 2017) (quotation marks omitted).

**I**

We start with Vinales's challenge to the District Court's application of the

drug-distribution premises enhancement under § 2D1.1(b)(12).  Vinales

acknowledges that he "maintained" the Willow Street premises, where he had

lived at some point prior to his arrest.  But he claims not to have done so "for the

purpose of manufacturing or distributing a controlled substance."

It is somewhat surprising that we have not directly addressed or

interpreted the drug-distribution premises enhancement under § 2D1.1(b)(12) in

a published opinion.  In the absence of any precedent on the issue, we can decide

this case by relying on the commentary in the Guidelines manual that "interprets

or explains" § 2D1.1(b)(12).  United States v. Alvarado, 720 F.3d 153, 158 n.2 (2d

Cir. 2013) (quotation marks omitted).  That "commentary . . . is authoritative

unless it violates the Constitution or a federal statute, or is inconsistent with, or a

plainly erroneous reading of, that guideline."  Id. (quotation marks omitted)

Here, the commentary provides as follows:

> Manufacturing or distributing a controlled substance
> need not be the sole purpose for which the premises was

6

maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n.17.[2]  As we explain below, the language confirms that the District Court properly applied the drug-distribution premises enhancement using a "totality of the circumstances" test, which is appropriate given the fact-intensive nature of the inquiry.  See United States v. Murphy, 901 F.3d 1185, 1191 (10th Cir. 2018); cf. Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 105 (2d Cir. 2011) (noting that the resolution of "a fact-intensive question" should be "based on the totality of the circumstances").

---

[2] We have applied this commentary in a series of summary orders.  In those cases, we determined that a district court may apply the drug-distribution premises enhancement based on either, or both, the presence of a large quantity of drugs and drug paraphernalia or a demonstrated history of prior drug purchases or organizational meetings at a premises.  See United States v. Sampel, 860 F. App'x 789, 792 (2d Cir. 2021), cert. denied 142 S. Ct. 1216 (2022); United States v. Robtoy, 848 F. App'x 53, 54–55 (2d Cir. 2021); United States v. Cedeno-Martinez, 791 F. App'x 272, 276 (2d Cir. 2019); United States v. Holley, 638 F. App'x 93, 98–99 (2d Cir. 2016).  We conversely held in a summary order that the enhancement does not apply where a defendant "consummated no drug transactions on the premises" and his "storage" of drugs and proceeds at the premises "was merely transient," such as when those materials were found in clothing.  United States v. McDowell, 804 F. App'x 38, 40 (2d Cir. 2020).

The District Court found that "at the time of [Vinales's] arrest . . . he was not living at Willow Street," App'x 94, and that Vinales admitted to the arresting officers that he was living elsewhere while "he used the Willow Street address to sell drugs," App'x 89. In other words, the District Court explained, Vinales "didn't give the [Willow Street] apartment up, he didn't turn the utilities off, he continued to sell drugs out of the premises by his own admission." App'x 94–95. Vinales's admission was corroborated: Officers searching the Willow Street premises on the day of Vinales's arrest discovered a scale and several hundred bags of narcotics. On these facts, the District Court determined that a primary or principal use for the premises while Vinales lived elsewhere before his arrest was to distribute drugs. App'x 95; U.S.S.G. § 2D1.1 cmt. n.17.

Vinales counters that there was an inadequate factual basis for the application of the enhancement because the record did not show when Vinales moved out of the Willow Street premises to a different primary residence. The Government responds by inviting us to hold, along with our sister circuits, that a defendant's use of a premises as a home does not categorically bar application of the enhancement. See, e.g., United States v. Gardner, 32 F.4th 504, 526 (6th Cir. 2022) (affirming the application of the enhancement where a defendant "used his

8

home to receive, weigh, distribute, and cook cocaine"); Murphy, 901 F.3d at 1192 (similar); United States v. George, 872 F.3d 1197, 1206 (11th Cir. 2017) (holding that the enhancement could apply where a witness purchased multiple pounds of marijuana and another witness saw "packaging equipment, scales, heat-sealing machines, and firearms" at a defendant's residence).

We decline the Government's invitation. Although the rule the Government and our sister courts espouse makes sense given the fact-intensive inquiry that § 2D1.1 demands, we can resolve this appeal without it. Vinales continued to sell drugs from the Willow Street premises even after he moved his residence to a different location. At that point, the Willow Street premises may have also been a place for Vinales and others to socialize. But the District Court could permissibly determine that the Willow Street premises was by then used as a drug house rather than a residence.

## II

Vinales also challenges the District Court's failure to consider a downward departure from the Guidelines sentence in order to give effect to the parties' plea bargain. He claims that the court evidently misunderstood its authority to do so under United States v. Fernandez, 877 F.2d 1138, 1144 (2d Cir. 1989). But we

9

have held that "[a] district court's silence concerning its refusal to depart downward, generally, does not support an inference that the district court misapprehended its scope of authority." United States v. Scott, 387 F.3d 139, 143 (2d Cir. 2004). We see (and Vinales points to) nothing else suggesting that the District Court did not grasp its authority under Fernandez. We therefore reject Vinales's argument that his sentence was procedurally unreasonable on this ground.

## CONCLUSION

We have considered Vinales's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.