23-6091-cr; 23-6098-cr
*United States v. Martin*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of December, two thousand twenty-four.

PRESENT:       GUIDO CALABRESI,
               SARAH A. L. MERRIAM,
                    *Circuit Judges*,
               JED S. RAKOFF
                    *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

    *Appellee*,

        v.                                             23-6091-cr; 23-6098-cr[1]

---

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

[1] This appeal is currently consolidated with three other dockets: 23-6011; 23-6021; and 23-6258. On November 17, 2023, a panel of this Court dismissed Defendant-Appellant Corey Mobley's appeals at docket numbers 23-6011 and 23-6021. We address Defendant-Appellant Lamonte Johnson's appeal at docket number 23-6258 in a separate ruling.

JOHN MARTIN, a/k/a John-John, a/k/a Little
John, a/k/a Lil John, a/k/a LJ; COREY
MOBLEY; LAMONTE JOHNSON,

     *Defendants-Appellants*,

GABRIEL STROIA; BRANDON DANIELS;
SHI ZHEN LIN, a/k/a Kevin Lin, a/k/a Kev,

     *Defendants*.

_____

FOR APPELLEE:                       JONATHAN SIEGEL (Susan Corkery, Michael W. Gibaldi, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT:     DEVIN MCLAUGHLIN, Langrock Sperry & Wool, LLP, Middlebury, VT.

Appeal from two judgments of the United States District Court for the Eastern District of New York (Dearie, *J.*).

**UPON DUE CONSIDERATION,** the judgments of the District Court entered on January 13, 2023, and January 26, 2023, are **AFFIRMED**.

Defendant-Appellant John Martin ("Martin") appeals from two judgments of the District Court imposed at the same proceeding; one sentences him principally to 180 months of imprisonment based on his guilty plea to charges arising out of a 2019 robbery conspiracy, and the other sentences him principally to a consecutive 24 months of imprisonment based on violation of conditions of supervised release imposed on Martin in a 2007 judgment.

Martin's brief asserts: "Mr. Martin is appealing . . . the judgment and sentence entered against him . . . for the supervised release violation." Appellant's Br. at 1. But the brief makes no arguments about the supervised release violation or resultant sentence. "Issues not sufficiently argued in the briefs are considered" forfeited on appeal, and we normally will not address them. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). Accordingly, we limit our review to the conviction and sentence in Martin's 2019 robbery case.

Martin and several associates conspired, in early 2019, to commit robberies. After an initial failed attempt, they successfully robbed a home in New Jersey, which they targeted because they believed the residents had a large sum of money in the house. They organized another robbery in Staten Island that was called off, and then on May 4, 2019, they robbed a home in Queens, which they targeted because they believed they would find a large amount of money – proceeds of drug trafficking. During the Queens robbery, several people were forced into a bedroom while Martin's co-conspirators searched the house, and one victim was sexually assaulted.

On July 30, 2021, Martin pled guilty to the following charges, set out in a third superseding indictment: (1) Count One, charging him with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951(a); and (2) Count Two, charging him with committing and threatening to commit physical violence in furtherance of a plan to commit Hobbs Act robbery, in violation of 18 U.S.C. §2 and §1951(a).[2] On January 12,

_____

[2] Martin also pled guilty to Count Three of the third superseding indictment, charging him with possessing and brandishing firearms during a crime of violence in violation of

3

2023, the District Court sentenced Martin principally to 180 months' imprisonment and three years of supervised release.

Martin contends on appeal that the District Court erred by: (1) failing to inquire whether his plea was voluntary, as required by Federal Rule of Criminal Procedure 11(b)(2); (2) increasing his offense level under the U.S. Sentencing Guidelines ("Guidelines") by four levels for serious bodily injury, under section 2B3.1(b)(3)(B); and (3) increasing his Guidelines offense level by two levels under the "vulnerable victims" provision, section 3A1.1(b)(1).

## I.    <ins>Rule 11(b)(2) – Voluntariness of Martin's Guilty Plea</ins>

Before accepting a guilty plea, a district court "must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). Martin contends that the District Court failed to conduct this required inquiry at his plea hearing, and a review of the transcript indicates that is true. The District Court did not ask Martin whether his plea was the result of force, threats, or promises. The District Court made the following all-encompassing finding: "Based on the information given to me, I find that the defendant is acting voluntarily and he fully understands his rights, the consequences and possible consequences of his pleas, and that there are factual bases for these pleas of guilty." Martin App'x at 68. The District Court then accepted

---

18 U.S.C. §2, §924(c)(1)(A)(i), and §924(c)(1)(A)(ii). At sentencing, the District Court granted the government's motion to dismiss this charge based on a change in Department of Justice policy.

Martin's plea.

The District Court erred in failing to inquire of Martin about any threats or promises inducing his plea. But Martin has waived any objection to that error.

On November 3, 2021, Martin wrote to the District Court stating that he felt "tricked" by his counsel, Attorney Levitt, into pleading guilty, emphasizing the "pressure" he had felt to plead that day. Martin App'x at 72. On December 6, 2021, the District Court held an in-person status conference with Martin present at which it appointed additional, independent counsel, Attorney Stern, to advise Martin on the issues he had raised regarding his plea and his counsel. The District Court advised Martin: "I think it is important that you get some detached advice from yet another experienced and respected lawyer. . . . I think it is critical that you get some good advice before we proceed." Gov't App'x at 4.

On December 21, 2021, the District Court conducted another status conference with Martin present. At that conference, Attorney Stern told the District Court that Martin did "not want to withdraw his plea" but might want to contest certain facts "at a sentencing hearing via Fatico or whatever vehicle is available to him." Gov't App'x at 10-11. He also reported that Martin was unsure whether he wanted Attorney Levitt to continue representing him. Attorney Levitt asked for additional time to consult with Martin, which was granted.

On December 26, 2021, Martin wrote to the District Court asking to withdraw his plea and stating that his plea was the result of "duress" and "coercion" by Attorney Levitt. Martin App'x at 74. In response, Attorney Levitt moved to withdraw as counsel;

5

the District Court granted that motion and appointed new counsel, Attorney Hueston.

On March 28, 2022, Attorney Hueston filed a status report with the Court stating: "I write to inform the Court that Mr. Martin does not wish to vacate his plea and will continue onto sentencing in his case." *United States v. Martin*, No. 1:19CR00221(RJD), ECF No. 224 (E.D.N.Y. Mar. 28, 2022). Martin proceeded to sentencing represented by Attorney Hueston and did not express any further concerns to the District Court about his plea. At the sentencing hearing, Martin addressed the District Court directly; he did not mention any dispute with the validity of his plea, or any complaints about the performance of his prior counsel.

We conclude that in these circumstances Martin has waived any argument as to the voluntariness of his plea. Martin raised concerns about his plea in his letters to the District Court – but he then *affirmatively withdrew* any claim that his plea was involuntary, and any request to vacate the plea. The District Court appointed independent counsel to advise Martin about his claims; held multiple hearings with Martin present; and eventually discharged the attorney who represented him at his plea and appointed new counsel. Martin had every opportunity to challenge his plea. At the end of that process, he affirmatively informed the Court, through new counsel, that he did not wish to withdraw his plea. That constitutes waiver. "We have identified waiver where a party asserts, but subsequently withdraws, an objection in the district court." *United States Spruill*, 808 F.3d 585, 597 (2d Cir. 2015); *see also United States v. Weiss*, 930 F.2d 185, 198 (2d Cir. 1991) (finding defendant "waived his right to appeal" the exclusion of certain evidence where his "counsel withdrew his objection to the exclusion" at trial).

6

We therefore find that any challenge to the District Court's error in failing to canvass Martin as required by Rule 11(b)(2) is waived, and we decline to disturb the District Court's finding that Martin's guilty plea was voluntary.[3]

## II.    Application of Offense-Level Increases Under the Guidelines

Martin objected, in the District Court, to the imposition of the two Guidelines provisions he now challenges on appeal. Where, as here, an objection has been preserved, this Court "review[s] the procedural reasonableness of a sentence under a deferential abuse-of-discretion standard. This standard incorporates *de novo* review of questions of law, including our interpretation of the Guidelines, and clear error review of questions of fact." *United States v. Vinales*, 78 F.4th 550, 552 (2d Cir. 2023) (per curiam) (citations and quotation marks omitted). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines . . . [or] bases its sentence on clearly erroneous facts." *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (per curiam).

### A.    Serious Bodily Injury – Guidelines Section 2B3.1(b)(3)(B)

A defendant's offense level under the Guidelines – including specific offense characteristics and adjustments – is "determined on the basis of . . . all acts and omissions

---

[3] "As a general matter, a plea is deemed . . . 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). The record contains no support for a finding that Martin's plea was not voluntary. The transcript of the plea colloquy suggests that Martin was fully engaged in the hearing, asking questions of his counsel when necessary and responding appropriately to questions from the District Court. Accordingly, we see no reason to set aside Martin's waiver of this issue.

committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," U.S.S.G. §1B1.3(a)(1)(A), as well as

> in the case of a jointly undertaken criminal activity . . . , all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity . . . .

U.S.S.G. §1B1.3(a)(1)(B). "The district court must find the facts relevant to a sentencing enhancement by a preponderance of the evidence." *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013) (per curiam).

Section 2B3.1(b)(3)(B) provides: "If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury," dictating a four-level increase for "Serious Bodily Injury." "[I]f a defendant participates in jointly undertaken criminal activity, he or she may be sentenced based on criminal acts committed by other participants if the acts were committed in furtherance of the jointly undertaken activity and could reasonably have been foreseen by the defendant." *United States v. Studley*, 47 F.3d 569, 573 (2d Cir. 1995). Martin does not dispute that his co-conspirators committed acts that caused a victim serious bodily injury during the robbery; rather, he argues that the specific act that inflicted the injury – a sexual assault – was not one he reasonably could have foreseen.

During the robbery, Martin's co-conspirators sexually assaulted a victim. When Martin's co-conspirators could not find the money they believed was in the house, they confronted one of the occupants, demanding that she produce the money. When she insisted she did not know where the money was, one co-conspirator, Daniels, "pulled

down his pants and [the victim's] pants and rubbed his penis against [her] anal area, while holding a gun to her back." *United States v. Martin*, No. 1:19CR00221(RJD), Pre-Sentence Report, ¶17 (E.D.N.Y. July 7, 2022) (hereinafter "PSR"). The Application Notes provide that "'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse." U.S.S.G. §1B1.1, cmt. n.1(M).[4]

The District Court stated that although it did "not believe that the sexual assault that occurred . . . was foreseeable, to Mr. Martin," such an inquiry was "beside the point" because "[s]erious bodily injury was certainly foreseeable to Mr. Martin in whatever form it [took]." Martin App'x at 82. The District Court characterized the robbery as "an invasion" and observed that, given "[t]he very nature of the crime, the way, how it occurred, in a home, with weapons drawn, it [was] entirely foreseeable that serious bodily injury, if not worse, could occur during the course of this incident." *Id.*

We review *de novo* the District Court's legal interpretation of the Guidelines. *See Vinales*, 78 F.4th at 552. We do not agree that *any and all* acts committed in the course of a robbery that cause serious bodily harm to a victim would trigger the application of section 2B3.1(b)(3)(B). While it is true that home-invasion robberies are inherently dangerous, not *every* possible act causing harm to a victim would be *reasonably foreseeable* to a co-conspirator.

However, we also do not agree with Martin that the District Court's finding that

---

[4] Criminal sexual abuse includes "engag[ing] in a sexual act with another person without that other person's consent." 18 U.S.C. §2242(3). Daniels's conduct satisfies that statute.

the sexual assault, *specifically*, was not foreseeable to Martin precludes application of the increase for serious bodily injury. The District Court made clear that it was finding that it was foreseeable to Martin that his co-conspirators would commit an act in furtherance of the robbery that caused serious bodily injury – "in whatever form it takes." Martin App'x at 82. The record reflects that Daniels committed the sexual assault *as part of his efforts to persuade the victim to reveal the location of the money*. The assault therefore was committed in furtherance of the robbery. And the use of force to persuade victims to turn over the money is certainly foreseeable to a robbery conspirator – even if the precise nature of the force that will be used is not.[5] This is entirely consistent with the District Court's finding.

We therefore conclude that an act causing serious bodily injury to the victim, inflicted as part of the effort to persuade her to turn over the money, was reasonably foreseeable to Martin as a member of the conspiracy to commit a home-invasion robbery.[6] Accordingly, we affirm the imposition of the four-level increase.

---

[5] Indeed, the day before this robbery, Martin, Daniels, Mobley, and another man had traveled together to attempt a robbery, and Daniels and Mobley had brought firearms and zip ties with them. Martin was therefore on notice that Daniels and Mobley were prepared to restrain victims and use firearms to commit a robbery.

[6] Another co-conspirator, Mobley, sexually assaulted the same victim twice – once during the search for money and again, later, *after* it was clear that no money would be found. Mobley's second assault does not appear to have been committed in furtherance of the robbery; there is no indication that it was associated with threats and demands to locate the money. That assault therefore might well not have supported an increase for bodily injury, but this does not alter our decision, because Daniels's assault is sufficient to support the increase.

## B. Vulnerable Victims – Guidelines Section 3A1.1(b)(1)

Section 3A1.1(b)(1) provides: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase [the offense level] by 2 levels." The Application Notes define a "vulnerable victim" as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. §3A1.1 cmt. n.2. Application of this increase "does not require that the defendant select the victim because of his or her vulnerability – it is sufficient that he knew or should have known of this quality when deciding to go ahead with the crime." *United States v. McCall*, 174 F.3d 47, 50 (2d Cir. 1998).

The government identified five potential vulnerable victims in this case: an elderly person, a disabled person, and three young children, all of whom were in the home at the time of the robbery. After forcibly entering the home, Daniels and Mobley forced these victims into a downstairs bedroom; because the disabled person could not walk, Mobley dragged her and the child she was holding into the room. About ten minutes later, Mobley called Martin, who had been waiting in the car, and asked him to come inside. Martin remained inside for several minutes, and the District Court found that while inside, Martin stood "by the door of the room in which these victims were restrained, tripping, almost tripping over a child's sneaker, [and] walking right past a wheelchair." Martin App'x at 83.

Martin does not contest that these people are victims, or that they qualify as

11

"vulnerable" under the Guidelines. Nor does he challenge the District Court's factual findings about his actions in the house, or what he saw. Rather, Martin argues that "the presence of vulnerable victims was completely unknown to him *at the outset*, and he had nothing to do with these victims after he knew or should have known of their presence." Appellant's Br. at 31 (emphasis added). Relying on *McCall*, 174 F.3d at 50, Martin contends that the application of the increase turns on "his knowledge base at the time the co-conspirators invaded the home." Appellant's Br. at 30. The government argues that it is enough that "Martin chose to continue his participation in the crime after learning of the vulnerable victims." Appellee's Br. at 96. In reply, Martin contends that the government's theory cannot support the increase because the District Court made no such finding.

> The District Court made the following findings:
>
> Mr. Martin entered the home after about 10 minutes when, apparently, Mobley and company were not successful in locating any money, obviously, consulting with his colleagues, standing, I might add, by the door of the room in which these victims were restrained, tripping, almost tripping over a child's sneaker, walking right past a wheelchair, I have no trouble concluding that he either knew or should have known, certainly, that these were vulnerable victims.

Martin App'x at 83. It did not make a specific finding that Martin "decid[ed] to go ahead with the crime" after entering the home and seeing the wheelchair and children's belongings. *McCall*, 174 F.3d at 50. But "we are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." *United States v. Simard*, 731 F.3d 156, 161 (2d Cir. 2013) (per curiam) (citation and quotation marks

omitted).

The PSR describes Martin's actions on the night of the robbery, to which Martin raised no objection. It states that Mobley called Martin at 9:40 PM; Martin then "entered the home for several minutes, spoke to Daniels and Mobley, and then went back outside." PSR ¶20. "Martin remained in the area for the next fifteen minutes and continued calling his co-conspirators inside the home[.]" PSR ¶21. "Later that night, all three robbers regrouped together at Daniels's mother's apartment in Brooklyn." PSR ¶22. Martin's conduct, as described in the PSR, strongly supports a finding that Martin continued to participate in the conspiracy after having been in the home. And as noted, Martin does not challenge the District Court's factual finding that he would have seen the wheelchair and children's belongings. Accordingly, we find no abuse of discretion in the District Court's application of the two-level increase for vulnerable victims.

*        *        *

We have considered Martin's remaining arguments on appeal and find them to be without merit. For the foregoing reasons, the judgments of the District Court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court